UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-cr-84 (PLF) |
| : | |
| CODY PAGE CARTER CONNELL & : | |
| DANIEL PAGE ADAMS, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANTS' MOTION TO RECONSIDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully responds to the defendants' joint motion for this Court to reconsider its findings of guilt as to both defendants. ECF 144. The government has previously set forth the detailed facts of this case, *see* ECF 1-1, 100, and 110, and incorporates them by reference.

Following a stipulated bench trial on July 28, 2023, this Court convicted the defendants of all the charges in the Third Superseding Information. As relevant to the instant motion, the Court convicted the defendants of Counts Two, Four, and Five, which respectively charged violations of 18 U.S.C. § 1512(c)(2), 18 U.S.C. § 1752(a)(1), and 18 U.S.C. § 1752(a)(2). On August 5, 2024, the defendants jointly moved for this Court to reconsider its verdict as to Count Two based on the United States Supreme Court's decision in *Fischer v. United States*, 630 U.S. ___, 144 S. Ct. 2176 (June 28, 2024), and Counts Four and Five based on *United States v. Griffin*, No. 22-3942, argued December 4, 2023, which is presently pending before the Circuit. Reconsideration is inapposite, and the government respectfully opposes the defendants' request.

The Supreme Court's holding in *Fischer* renders some of the elements that the Court considered at trial in this case incorrect. 144 S. Ct. 2176 (2024). This could amount to reversible trial error, which warrants vacating the defendants' convictions on Count Two. *See United States*

*v. Reynoso*, 38 F.4th 1083, 1090–91 (D.C. Cir. 2022). The defendants, however, frame their motions as something different and far more extreme: as motions to reconsider and reverse the finding of guilt and enter a judgment of acquittal. *See generally* ECF 144. Those contentions lack merit. The defendants' request that this Court reconsider the evidence and render a judgment of acquittal is foreclosed by both principles of procedural regularity and D.C. Circuit precedent holding that "a defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law." *Reynoso*, 38 F.4th at 1091 (explaining that any error in those circumstances "is 'properly understood as a claim of trial error' in failing to instruct the jury on the omitted element"). As explained below, the only remedy plausibly available to the defendants at this juncture is that the Court vacate their convictions on Count Two.

**I.  Argument**

*A.  A motion for the court to "reconsider" its findings of guilt is inappropriate.*

Before turning to the merits, the defendants' motions are predicated upon the Court's authority to reconsider the evidence in light of a change of the law. According to the defendants, the Court can do so as part of its inherent authority. ECF 144 at 1 (*citing United States v. DaSilva*, 21-cr-564, 2024 WL 519909 (D.D.C. Feb. 8, 2024) (Nichols, J.)). But their motions are not based on or governed by Rule 29 or any specific Federal Rule. The government respectfully disagrees with *DaSilva*'s outcome and the underlying analysis of this inherent authority.

The Supreme Court has previously considered a trial court's authority to reconsider past acquittals. For example, in 2005, the Supreme Court considered a trial court's reconsideration of a mid-trial acquittal. *Smith v. Massachusetts*, 543 U.S. 462 (2005). That acquittal, the Court held,

2

was a final ruling, not subject to revision, "unless the availability of reconsideration has been plainly established by pre-existing rule or case authority expressly applicable to midtrial rulings on the sufficiency of the evidence." *Id.* at 473.

Likewise, the Supreme Court has considered cases in which a trial court attempts to revisit a jury's finding of guilt. In *Carlisle v. United States*, 517 U.S. 416 (1996), the Supreme Court rejected the trial court's grant of an untimely motion for a judgment of acquittal. In that case, the defendant moved for a judgment of acquittal one day later than the rules permitted, and the trial judge initially denied the motion both on the merits and as untimely. *Id.* at 418. At sentencing, the trial court reversed course and entered a judgment of acquittal. *Id.* The Supreme Court held this was improper. *Id.* at 433. In so ruling, the Court rejected the defendant's arguments that Federal Rule of Criminal Procedure 2 "vests the court with the supervisory power to enter judgment of acquittal" and that the trial court's "inherent supervisory power" provided such authority. *See id.* at 420–28. The Court explained: "Whatever the scope of this 'inherent power,' […] it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Id.* at 426. The government is unaware of any Federal Rule of Criminal Procedure that would allow a district court to reopen a guilty verdict entered at the conclusion of a bench trial.

The government has endeavored to identify cases in which a trial court had vacated or reconsidered its own bench verdict following a contested or stipulated trial. Beyond *United States v. DaSilva*, No. 21-cr-564 (CJN), 2024 WL 519909 (D.D.C. Feb. 8, 2024), there appears to be scant authority for the notion that this procedure is permissible. Indeed, some state appellate courts have expressly prohibited such a procedure.[1] In fact, the government was not able to find *any*

---

[1] *See People v. Dobson*, 25 N.Y.S.3d 313, 315 (N.Y. App. Div. 2016) ("A Trial Judge who has

federal cases supporting the proposition that a trial court has the authority to reconsider a guilty verdict out of time, other than two district court cases: *DaSilva* and *United States v. Mendoza*, 390 F. Supp. 2d 925 (N.D. Cal. 2005).

In *Mendoza*, the district court "reconsidered its guilty verdict, vacated its finding of guilty, and dismissed the indictment" in an illegal re-entry case based on an intervening change in circuit law between the original verdict and the dismissal. 390 F. Supp. 2d at 928. But the government appealed such dismissal. In ruling, the Ninth Circuit did not directly address the propriety of the district court's reconsideration, because the Ninth Circuit had reheard *en banc* the case that had purportedly changed the law. *See United States v. Tafoya-Mendoza*, 232 F. App'x 675 (9th Cir. 2007), *as amended on denial of reh'g and reh'g en banc* (Aug. 17, 2007). However, the Ninth Circuit reversed the district court's dismissal of the indictment and remanded for further proceedings. *Id.* In light of this appellate history, *Mendoza* lends scant support for the notion that district courts have authority to revisit their own guilty verdicts and dismiss the underlying charges.

In *DaSilva*, Judge Nichols chose to reconsider a previous conviction in another January 6 case, after he had subsequently determined a new reading of the *mens rea* requirement in 18 U.S.C. § 1752(a)(1) and (2). The defendant, Matthew DaSilva, was convicted following a bench trial of various offenses, including three violations involving 18 U.S.C. § 1752. *DaSilva*, 2024 WL 519909 at *1. In a later case, *United States v. Elizalde*, 23-cr-170 (CJN), 2023 WL 8354932 (D.D.C. Dec.

---

rendered a guilty verdict after a nonjury trial has neither inherent power nor statutory authority to reconsider his [or her] factual determination. Although he [or she] may correct clerical or ministerial errors, he [or she] is without authority to reassess the facts and change a guilty verdict to not guilty." (quotations omitted)); *State v. Williams*, 891 So. 2d 26, 30 (La. Ct. App. 2004) ("We conclude that filing a motion for post verdict judgment of acquittal in a bench trial was procedurally improper.")

1, 2023), Judge Nichols concluded that a conviction under 18 U.S.C. § 1752 required proof of an additional element that had not been included in the legal instructions in *DaSilva*.[2] He therefore reconsidered his findings of guilt as to Section 1752 offenses in *DaSilva*. 2024 WL 519909 at *7.

To justify this reconsideration, Judge Nichols held that a court's authority to reconsider interlocutory orders "logically extends to findings of guilty in bench trials," because findings of guilt do not divest the court of jurisdiction and permit appeal. *Id.* at *3–4. But a finding of guilt in a criminal case is not an ordinary interlocutory order. To the contrary, the Federal Rules of Criminal Procedure set out in detail the narrow circumstances in which a guilty verdict can be revisited. *See, e.g.*, Fed. R. Crim. P. 29, 33. The D.C. Circuit has repeatedly emphasized the finality of jury verdicts. *Cf. United States v. Campbell*, 684 F.2d 141, 151–52 (D.C. Cir. 1982) (holding that alleged juror misconduct did not justify overturning verdict and emphasizing "the finality of the verdict"); *United States v. Williams-Davis*, 90 F.3d 490, 505 (D.C. Cir. 1996) (emphasizing the importance of "[p]reserving the finality of jury verdicts" to denying defendant a hearing on post-trial juror allegations of pre-deliberation discussions).

It is unclear why the Court should approach the finality of its verdict any differently than a verdict rendered by a jury. *See People v. Maharaj*, 679 N.E.2d 631, 657 (N.Y. 1997) ("Simply because the court was acting as both fact finder and Judge of the law does not allow for a result different from that dictated when a court presiding over a jury trial [made a legal error]. After formal rendition of a verdict at a bench trial, a trial court lacks authority to reweigh the factual

---

[2] Specifically, Judge Nichols concluded that conviction under Section 1752 required proof, beyond a reasonable doubt, that the defendant "knew that a Secret Service protectee would be present at the Capitol." *DaSilva*, 2024 WL 519909 at *6. As discussed below, the government and many courts have disagreed with Judge Nichols' ruling regarding the *mens rea* required under 18 U.S.C. § 1752(a). *See infra* at 11-13.

5

evidence and reconsider the verdict.") (citations omitted). If a jury were to return a guilty verdict and, later, some other juries returned different verdicts on allegedly similar facts and under similar legal instructions, the court would not recall the first jury, reopen the verdict, and ask the jury to deliberate again. Indeed, even in the context of Rule 29, despite the fact Rule 29 only refers to juries, courts have held that the same standard applies to bench trials and judges too. *See United States v. Jabr*, 18-cr-105-PLF, 2019 WL 13110682, at *4 (D.D.C. May 16, 2019) (collecting cases).

The *DaSilva* opinion attempts to square this circle largely through a technical interpretation of the Federal Rules of Criminal Procedure distinguishing between juries and judges as factfinder for purposes of Rule 29. This interpretation is almost entirely underpinned by *DaSilva*'s statement that "[j]uries return guilty 'verdicts,' judges render 'findings' of guilty." 2024 WL 519909 at *5. But courts regularly use the terms "verdict of guilty" and "finding of guilt" interchangeably, regardless of whether the factfinder is a jury or judge—even in some of the cases *DaSilva* cites. *See, e.g.*, *Ex Parte Lange*, 85 U.S. 163, 201–02 (1873) (referring to jury's "finding" of guilt); *Smith v. Massachusetts*, 543 U.S. 462 (2005) (discussing impact of judge's "directed verdict" on double jeopardy considerations). Thus, as a matter of law, the procedural framing—a Motion to Reconsider—is inadequate.

### B. The proper remedy is vacatur.

Putting defendants' erroneous reliance on reconsideration aside, the government agrees that the elements used by the Court to convict the defendants of Count Two no longer implement the controlling reading of the statute, in light of *Fischer*. The fact that the Court considered elements that *later* turned out to be incorrect may amount to an instructional, or trial, error,

6

necessitating that the Court vacate the defendants' convictions on that count, whether on appeal or at this juncture. *United States v. Reynoso*, 38 F.4th 1083, 1090–91 (D.C. Cir. 2022) ("[A] defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law."). On a procedural record like the one in this case, the D.C. Circuit held that "a sufficiency claim is a non sequitur." *Id*. at 1091. "If the [finder-of-fact], consistent with then-prevailing law, is never asked to find the existence of something later established to be an offense element, there is no freestanding insufficiency-of-the-evidence claim as to that element." *Id.* at 1090. Since the Court drew the elements for Count Two from then-prevailing law, it was not asked to find the existence of the additional element required by the Supreme Court in *Fischer*. In other words, neither the government nor the Court did anything wrong.

Given the current pre-sentencing procedural posture, the defendants' apparent trial-error claim is best understood as an (untimely) Rule 33 Motion. Fed. R. Crim. Pro. 33(a) (the Court may grant "a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment."); *United States v. Kirsch*, 151 F. Supp. 3d 311, 315 (W.D.N.Y. 2015) (noting that a significant intervening change in the law may constitute a valid basis to extend time under Rule 45(b)(1)(B)). And, as in any Rule 33 motion, the proper remedy, if any, is a new trial.

The proper procedural pathway is vacatur. When reconsidering a finding of guilt based on a potential legal error, the district court sits in a similar position to an appellate court considering the same question. *Bravo-Fernandez v. United States*, 580 U.S. 5, 20 (2016). The ordinary remedy is vacatur, not reversal without an opportunity for retrial. *Id.*; *United States v. Argueta-Rosales*,

819 F.3d 1149, 1151 (9th Cir. 2016) (vacating and remanding for a retrial). That should be the only remedy here, to the extent the defendants are seeking a new trial under Rule 33.

        C. *In this case, any error from the omission of an element in the instructions for Counts Four and Five would be harmless.*

Even if the court determines that it did eliminate an element from the legal instructions in this case, that "does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *United States v. Neder*, 527 U.S. 1, 9-10 (1999) (failure to instruct the jury on every element of the charged offense is subject to harmless error analysis); *see also United States v. Johnson*, 216 F.3d 1162, 1167 (D.C. Cir. 2000) ("[E]rror can be harmless even if other facts necessarily found by the jury are not the functional equivalent of the omitted or misdescribed element—even under a broad definition of 'functional equivalent.'" (*quoting Neder*, 527 U.S. at 13)) (cleaned up). *Cf. United States v. Sheehan*, 512 F.3d 621 (D.C. Cir. 2008) (finding that error to include an element in an instruction was not harmless where the defendant was also precluded by the judge from presenting evidence that would rebut the government's evidence as to the omitted element).

This analysis requires asking, "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?". *Id.* at 19. If the record does not "contain evidence that could rationally lead to a contrary finding with respect to the omitted element," then the error is harmless because the "small errors or defects" would "have little, if any, likelihood of having changed the result of the trial." *Id.* (*quoting Chapman v California*, 386 U.S. 18 , 22 (1967)); *Johnson*, 216 F.3d at 1167.

In this case, even if the defendants' contentions regarding the *mens rea* requirement in §1752 were correct – they are not – any such error would be fundamentally harmless. The evidence

8

in this case is sufficient for a "rational jury" to find that the defendant knew that Vice President Pence was or would be present inside of the restricted area around the Capitol on January 6, 2021. *Neder*, 527 U.S. at 19; *Johnson*, 216 F.3d at 1167. The defendants drove through the night of January 5 into January 6, 2021, stopping only briefly to rest, so that they could be present for the events taking place in Washington that day. They then attended the former President's "Stop the Steal" rally. *See* ECF 100 at ¶ 8-9. During the rally, the former President gave a speech in which he made seven explicit references to the then-Vice President and his role in the proceedings at the Capitol that day. Other speakers, such as former New York City Mayor Rudolph Giuliani[3] and Professor John Eastman,[4] made additional references to the Vice President and his role in certifying the results of the 2020 presidential election.

The defendants themselves made statements that indicated that they had been following news surrounding the 2020 presidential election and were aware of the proceedings that were taking place in the Capitol that day. *See* ECF 100 at ¶¶ 18-19. Connell acknowledged that he breached the Capitol to "let American know we're not standing down anymore," *id.* at 18(b), and

---

[3] "We're here just very briefly to make a very important two points. Number one: every single thing that has been outlined as the plan for today is perfectly legal. I have Professor Eastman here with me to say a few words about that. He's one of the preeminent constitutional scholars in the United States. It is perfectly appropriate given the questionable constitutionality of the Election Counting Act of 1887 that the Vice President can cast it aside and he do what president called Jefferson did when he was Vice President." C-SPAN, "Trump's Jan. 6 Rally Speech," *available at* https://www.c-span.org/video/?507744-1/trumps-jan-6-rally-speech, at 2:19:18-2:20:06 (statement of Rudolph Giuliani).

[4] "And all we are demanding of Vice President Pence is this afternoon at 1:00 he let the legislators of the state look into this so we get to the bottom of it, and the American people know whether we have control of the direction of our government, or not." C-SPAN, "John Eastman at January 6 Rally," *available at* https://www.c-span.org/video/?c4953961/user-clip-john-eastman-january-6-rally at 7:45-8:16 (statement of John Eastman).

that "[congressmen and women] were scared" when he breached the Capitol, *id.* at 18(d). Later, Connell made plans to return to D.C. and engage in violence to stop the next significant event that was to take place after the 2020 presidential election: the inauguration of the new president on January 20, 2021. *See* ECF 110 at 15-16. Similarly, Adams stated that "[e]very time an elected official operates outside the boundaries of the constitution we need to burn this motherfucker down until they start arresting people." ECF 100 at ¶ 19(f). The inferences, while not explicit, are obvious.

The evidence thus demonstrates that the defendants were following the events connected to the 2020 presidential election leading up to January 6; understood the significance of January 6 and drove more than a thousand miles in a day to be present in D.C. that day; were present for speeches that took place earlier in the day on January 6 which indicated that the Vice President would be involved in the proceedings at the Capitol; and breached the Capitol with the intent to intimidate the lawmakers inside and stop the certification proceedings over which the Vice President was to be presiding. This evidence, taken together, is sufficient to establish for a reasonable factfinder to conclude that the defendants were aware that Vice President Pence was or would be present inside of the restricted area on January 6, 2021. Any error in omitting the element, therefore, would be harmless and unlikely to have an effect on the result of this case. *Neder*, 527 U.S. at 19; *Johnson*, 216 F.3d at 1167. In any event, as discussed further below, the Court was correct as to its legal interpretation on Counts Four and Five.

## II. The Appropriate Relief

### A. *The Court should vacate the defendant's convictions on Count Two.*

The legal instructions that the Court used to convict the defendants of Count Two, *see* ECF

10

100 at 2-3, are now incorrect following *Fischer*, 144 S. Ct. at 2186. For this reason, the government requests that the Court vacate the defendants' convictions on Count Two. *Reynoso*, 38 F.4th at 1090–91. Based on the facts of this case, in the interest of judicial economy, and the need to resolve this case—which was charged in January 2021—the government will, if the Court grants the motion to vacate, move to dismiss Count Two. Fed. R. Crim. P. 48(a).

> B. *The Court should not vacate its verdict as to the defendants' convictions under Section 1752(a).*

The defendants additionally argue that this Court should "reconsider" its verdict as to Counts Four and Five based on *United States v. Griffin*, No. 22-3942, which was argued before the Circuit last December but has yet to be decided. ECF 144 at 5-7. One of the issues in *Griffin* is whether proof of an offense under Section 1752 requires the government to prove that the defendant knew that a protectee of the United States Secret Service was or would be present in of the restricted area, as defined by that section. Presently, there exists a split within the courts of this District as to whether the government must prove that the defendant knew a Secret Service protectee was present inside the restricted perimeter to satisfy the *mens rea* element of 18 U.S.C. § 1752(a). Four courts have adopted the *mens rea* requirement proposed by the defendants. *See United States v. Samsel et al.*, 21-cr-537, ECF 345 at 23-33 (D.D.C Feb. 9, 2024) (Cobb, J.); *United States v. Groseclose*, 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024) (Cooper, J.); *United States v. Elizalde*, 2023 WL 8354932, at *7 (D.D.C. Dec. 1, 2023) (Nichols, J.); *United States v. Hotstetter*, 2023 WL 4539842, at *4 (D.D.C. July 13, 2023) (Lamberth, J). The government, and many other judges within this district, disagree with the defendants' proposed reading and do not require this specific knowledge of a Secret Service protectee's presence. *See United States v. Carnell et al.,* 23-cr-139 (BAH) (Memorandum Opinion, Feb. 15, 2024, ECF No. 98 at 10-12); *United States v.*

*Easterday*, 22-cr-404 (JEB), 2024 WL 1513527, at *10 (D.D.C. Apr. 8, 2024); *United States v. Chambers*, 23-cr-300 (DLF) (D.D.C. Mar. 14, 2024); *United States v. Kenyon*, No. 23-cr-101 (ABJ), (Mar. 12, 2024); *United States v. Ibrahim*, No. 21-cr-496 (TJK) (Apr. 16, 2024); *United States v. Smith*, No. 23-cr-71 (RDM), Trial Tr. at 82-97 (May 10, 2024); *United States v. Nester*, 22-cr-183 (TSC) (D.D.C. Mar. 5, 2024); Trial Tr. at 1199–1200; Mem. Court's Responses to Jury Questions at 4, *United States v. Rhine*, No. 21-cr-687 (RC), ECF No. 104 (D.D.C. Apr. 24, 2023); Trial Tr. at 330–32, *United States v. Griffin*, No. 21-cr-92 (TNM), ECF No. 106 (D.D.C. Mar. 22, 2022). As this court is well aware, the government thoroughly briefed its position that the *mens rea* requirement of 18 U.S.C. § 1752(a) does not require that the government prove that a Secret Service protectee was present inside the restricted perimeter. *See, e.g., United States v. Carnell et al.*, 23-cr-139 (BAH), ECF 72 and 82. The government again adopts that briefing. Notably, much of the briefing—the issue over whether the protectee provision of the definitional sub-statute is jurisdictional in nature—occurred *after Griffin* was argued.

In *United States v. Warnagiris*, this Court found that "to act 'knowingly' with regard to a 'restricted building or grounds' does not require that the defendant had knowledge of Secret Service protectee's presence within the restricted area." 2024 WL 1328510, at *4. In explaining its reasoning, this Court found that "[t]o find that a defendant must have knowledge of a protectee's presence would run counter to Congress's purpose in enacting a statute designed to safeguard the President and other Secret Service protectees by requiring the Secret Service to notify the public of which protectees are within a given area." *Id.* (*quoting United States v. Carnell*, 21-cr-139 (BAH), 2024 WL 639842, at *10-11 (*quoting United States v. Griffin*, 549 F.Supp 3d 49, 57 (D.D.C. 2021) (McFadden, J.))) (internal quotation marks eliminated). The Court later appeared

12

to clarify its position in *Warnagiris*, 21-cr-382 (PLF), Trial Tr. (April 1, 2024) at 9:2-11, and in the case of *United States v. GossJankowski*, 21-cr-123 (PLF), indicating that it would—notwithstanding the Court's original ruling—not issue a final verdict until *Griffin* had been decided. *See Warnagiris*, 21-cr-382 (PLF), Trial Tr. (April 1, 2024) at 12:9-13:2. As of this filing, the Court of Appeals has yet to rule on this issue. The lack of such a decision does not jeopardize the convictions of Count Four and Five.

The issue that is presently before the Court is whether its legal instructions were incorrect. Unless and until a higher court rules on the *mens rea* requirement of Section 1752(a), there exists no reason to believe that the defendants were convicted of Counts Four and Five based on erroneous legal instructions. *Reynoso*, 38 F.4th at 1090–91; *Kirsch*, 151 F. Supp. 3d at 315. Absent a ruling from the Court of Appeals, *see Easterday*, 2024 WL 1513527 at *10, and given the abovementioned evidence that would nonetheless satisfy the additional knowledge element as proposed by the defendants, this Court should deny at this time the defendants' motion to vacate the Court's guilty verdict on Counts Four and Five of the Third Superseding Information.

### III. Conclusion

For the reasons stated herein, the Court should vacate the defendants' convictions on Count Two. The Court should deny the defendants' motion to reconsider their convictions on Counts Four and Five, as such relief would be contrary to law and, in any event, inappropriate at this time.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:   *s/ Sean P. McCauley*
SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D Street, NW
Washington, DC 20530
Sean.McCauley@usdoj.gov