UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CODY PAGE CARTER CONNELL and<br>DANIEL PAGE ADAMS,<br><br>Defendants. | ) | Criminal No. 21-0084 (PLF) |

MEMORANDUM OPINION

On January 22, 2025, the Court entered an Order denying the United States' Motion to Dismiss Indictment with Prejudice Pursuant to Federal Rule of Criminal Procedure 48(a) ("Mot.") [Dkt. No. 180]. This Memorandum Opinion further explains the Court's reasoning.

## I. BACKGROUND

### *A. Mr. Connell's and Mr. Adams' Actions on January 6, 2021*

On January 6, 2021, a joint session of Congress convened to certify the results of the 2020 presidential election. See Trump v. Thompson, 20 F.4th 10, 17 (D.C. Cir. 2021). This certification process is mandated by the Twelfth Amendment to the United States Constitution and by the Electoral Count Act. See U.S. CONST. amend. XII; 3 U.S.C. § 15. Then-Vice President Mike Pence was present and presided over the certification proceedings. On that day, the United States Capitol Police had set up barriers around the perimeter of the Capitol grounds, and the exterior plaza of the Capitol was closed to members of the public. See Statement of Facts for Stipulated Trial ("Statement of Facts") [Dkt. No. 100] at 5.

Shortly before noon on January 6, at a rally on the Ellipse, just south of the White House, then-President Donald Trump reiterated his unfounded claims that the election was "rigged" and "stolen," and "urged then-Vice President Pence . . . to 'do the right thing' by rejecting various States' electoral votes and refusing to certify the election in favor of [Joseph] Biden." Trump v. Thompson, 20 F.4th at 17-18. As the court of appeals has recounted:

> Shortly after the speech, a large crowd of President Trump's supporters – including some armed with weapons and wearing full tactical gear – marched to the Capitol and violently broke into the building to try and prevent Congress's certification of the election results. The mob quickly overwhelmed law enforcement and scaled walls, smashed through barricades, and shattered windows to gain access to the interior of the Capitol. Police officers were attacked with chemical agents, beaten with flag poles and frozen water bottles, and crushed between doors and throngs of rioters. As rioters poured into the building, members of the House and Senate, as well as Vice President Pence, were hurriedly evacuated from the House and Senate chambers. Soon after, rioters breached the Senate chamber. In the House chamber, Capitol Police officers barricaded the door with furniture and drew their weapons to hold off rioters. . . . Capitol Police were not able to regain control of the building and establish a security perimeter for hours. The Joint Session reconvened late that night. It was not until 3:42 a.m. on January 7th that Congress officially certified Joseph Biden as the winner of the 2020 presidential election.

Id. at 18 (internal citations and quotation marks omitted). Defendants Cody Page Carter Connell and Daniel Page Adams were members of the crowd that entered the Capitol grounds that day and participated in the riot.

The defendants stipulated to the following facts in connection with their stipulated bench trial. See Statement of Facts.

Mr. Connell and Mr. Adams travelled to Washington, D.C., from their homes in Louisiana and Texas, respectively, to attend then-President Trump's "Stop the Steal" rally. Statement of Facts at 7. Following the rally, the defendants proceeded to the western front of the

Capitol. Id. at 8. At approximately 2:00 p.m., the defendants moved through the scaffolding placed outside the Capitol for the Presidential Inauguration towards the northwestern steps of the Capitol building. Id. at 8-9. While under the scaffolding, the defendants experienced the effects of tear gas but continued their advance. Id.

At approximately 2:09 p.m., defendants were at the head of the crowd that had climbed the northwestern steps to the Capitol building and were standing face-to-face with five United States Capitol Police officers. Statement of Facts at 9. The Capitol Police officers instructed the crowd to stop their advance, but despite this command, Mr. Adams said to the crowd "Are you ready to push? Come on! Let's go!" Id. Defendants and other members of the crowd began to push against the five Capitol Police officers – becoming increasingly violent. Id. The Capitol Police officers retreated to the Northwest Courtyard and were pursued by defendants and other members of the crowd. Id. at 9-10. Several minutes later, the defendants filmed other rioters at the Senate Wing Door smashing windows and opening doors so as to allow more rioters into the Capitol building. Id. at 10.

Mr. Connell and Mr. Adams were among the first to breach the Capitol building, entering through the Senate Wing door. Statement of Facts at 10. As Mr. Adams recounted in a message sent later that day: "Me and my cousin [Mr. Connell] led the charge. We were the first ones in. . . . We were the ones who broke through the last barricade." Id. at 11. Mr. Connell summarized the defendants' actions and assaults on Capitol Police officers, stating "we pushed the cops against the wall, they dropped all their gear and left. That's when we went to the door of the Capitol building and breach[ed] it" and "[w]e force[d] them to stand down. They had no other choice. They didn't just let us in the Capitol." Id.

*B. The Case Against Mr. Connell and Mr. Adams*

In February 2021, a grand jury charged Mr. Connell and Mr. Adams with numerous offenses based on their actions at the United States Capitol on January 6. Indictment [Dkt. No. 8]. Under the Third Superseding Information, the defendants faced seven counts: (1) civil disorder, in violation of 18 U.S.C. § 231(a)(3); (2) obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; (3) assaulting, resisting, or impeding a federal officer, in violation of 18 U.S.C. § 111(a)(1); (4) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (5) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (6) disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and (7) parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). Third Superseding Information [Dkt. No. 93].

Mr. Connell and Mr. Adams proceeded to a stipulated bench trial on July 28, 2023. See Minute Entry for July 28, 2023. In connection with the stipulated bench trial, Mr. Connell and Mr. Adams admitted to a series of facts – including that they had "assaulted, resisted, opposed, impeded, intimated, or interfered with" five United States Capitol Police Officers. See Statement of Facts at 14. In light of these admissions, the Court found Mr. Connell and Mr. Adams guilty on all counts. See Court Verdict [Dkt. No. 95].[1]

---

[1] Following the Supreme Court's decision in Fischer v. United States, 603 U.S. 480 (2024), the defendants moved for reconsideration of the Court's finding of guilt as to Count Two, under which the defendants were found guilty of violating 18 U.S.C. § 1512(c)(2). See Motion to Reconsider Finding of Guilt for Counts Two, Four, and Five [Dkt. No. 144]. While the government argued that the Court lacked the authority to reconsider its prior finding of guilt, it did not oppose the vacatur of the defendants' conviction on Count Two. See Government's Opposition to Defendants' Motion to Reconsider [Dkt. No. 145]. The Court subsequently granted in part the defendants' motion as it related to Count Two and vacated defendants' conviction as to that count. See Order [Dkt. No. 147].

On December 10, 2024, the Court sentenced each defendant to twenty-six months' incarceration and thirty-six months' supervised release. See Minute Entries for December 10, 2024; Judgment in a Criminal Case [Dkt. No. 174]; Judgment in a Criminal Case [Dkt. No. 176]. The Court also ordered the defendants to pay a fine of $2,000 each in lieu of restitution. See id. On December 16, 2024, Mr. Connell appealed the judgment to the United States Court of Appeals for the District of Columbia. See Notice of Appeal [Dkt. No. 173]; United States v. Cody Carter Connell, USCA Case No. 24-3180.

## II. DISCUSSION

On January 20, 2025, President Trump issued a sweeping proclamation pardoning individuals charged for their conduct at the Capitol on January 6, 2021. See Unnumbered Proclamation, -- Fed. Reg. ---- (Jan. 20, 2025), https://perma.cc/W4NT-4K4S (hereinafter "Proclamation"). The Proclamation commuted the sentences of a number of individuals, granted pardons to many more, and instructed the Attorney General to seek dismissal with prejudice "of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." Id. In spite of the government's success in securing the convictions of Mr. Connell and Mr. Adams, the government moved to dismiss the case against them with prejudice pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure. See Mot.

Rule 48(a) of the Federal Rules of Criminal Procedure provides that the "government may, with leave of court, dismiss an indictment, information, or complaint." FED. R. CRIM. P. 48(a). While the government has broad prosecutorial discretion in both pursuing and dismissing criminal cases, see, e.g., Wayte v. United States, 470 U.S. 598, 607-08 (1985) (recognizing the government's broad prosecutorial discretion), the Supreme Court and the D.C.

Circuit have recognized that the term "leave of court" in Rule 48(a) "obviously vest[s] some discretion in the court." Rinaldi v. United States, 434 U.S. 22, 29 n.15 (1977); see United States v. Ammidown, 497 F.2d 615, 620 (D.C. Cir. 1973). The discretion afforded to the Court under Rule 48(a) is granted in part to "guard[] against abuse of prosecutorial discretion." United States v. Ammidown, 497 F.2d at 620. "To ensure that the government's request for dismissal of criminal charges 'sufficiently protects the public,' the government may be required to submit 'a statement of reasons and underlying factual basis,' which must be 'substantial' to justify the dismissal and not 'a mere conclusory statement.'" United States v. DeCarlo & Ochs, Crim. No. 21-0073 (BAH), 2025 WL 266308, at *2 (D.D.C. Jan. 22, 2025) (quoting United States v. Ammidown, 497 F.2d at 620).

The Court has already expressed its fundamental disagreement with the government's decision to request dismissal of the January 6 cases and has flatly rejected the presidential proclamation's baseless assertion that these prosecutions represented a "grave national injustice." See United States v. GossJankowski, Crim. No. 21-0123 (PLF), 2025 WL 289135, at *4-6 (D.D.C. Jan. 24, 2025). The Proclamation's assertion is factually false. There has been no "grave national injustice." As the Court explained in summarizing its experience adjudicating many of these cases:

> The undersigned has presided over a great many of the January 6 cases, and other judges of this Court have done the same. In each of the cases, law enforcement diligently investigated the facts. The prosecutors from the Department of Justice and the United States Attorney's Office conscientiously presented the evidence to support the convictions – including powerful testimony from law enforcement officers and other witnesses, as well as hundreds of hours of shocking videos of assaults on the Capitol and those trying to protect it. In each case, either a judge or jury evaluated the evidence presented through the crucible of direct and cross-examination. Judges methodically applied the law to the facts or instructed juries to do so. The voluminous records created in these

> cases will forever reflect that in the tumultuous time following the events of January 6, 2021, this Court was at all times a place of law and fact.

Id. at *5. The cases against Mr. Connell and Mr. Adams are no exception.

In the instant case, the government's motion suffers from another fundamental problem: the posture of the case demands that the Court deny the government's motion. Turning first to Mr. Adams, the motion must be denied because final judgment has been entered and thus there is no "pending indictment[]" that the Court can dismiss. See Proclamation. As Judge Howell reasoned in denying the government's motion to dismiss as moot in another January 6 case:

> In any event, the scope of Rule 48(a) need not be decided here because defendant's four misdemeanor convictions are subject to section (b) of the proclamation, which provides a "grant [of] a full, complete and unconditional pardon," to the extent that defendant has accepted that pardon, see United States v. Flynn, 507 F. Supp. 3d 116, 136 (D.D.C. 2020) (noting that "a presidential pardon generally must be accepted to be effective"). As such, the proclamation's direction that the Attorney General "pursue dismissal . . . of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021," is inapplicable to defendant's case where no charging document with open counts is pending regarding defendant's conduct on January 6, 2021.

United States v. Herrera, Crim. No. 21-0619 (BAH), Minute Order (D.D.C. Jan. 22, 2025). "By its terms, the text of Rule 48 does not apply here where a defendant's convictions are final, not directly appealable, and subject only to collateral attack." Id. Furthermore, a government motion to dismiss is moot after a defendant is granted and accepts a presidential pardon. United States v. Flynn, 507 F. Supp. 3d 116, 136 (D.D.C. 2020). To be clear, a pardon "does not blot out guilt or expunge a judgment of conviction." Id. at 136 (quoting In re North, 62 F.3d 1434, 1437 (D.C. Cir. 1994)). Once a pardon is granted and accepted, the wrongdoer is

"release[d] . . . from punishment," though the pardon does not render him "innocent" of alleged violations of law, United States v. Flynn, 507 F. Supp. 3d at 136 – and certainly not to those he has conceded under oath. In sum, while the pardon is significant, it does not disturb the final judgment that has been entered in this case. Nor is there any role for the Court once a pardon is granted. See id.; United States v. Herrera, Crim. No. 21-0619 (BAH), Minute Order (D.D.C. Jan. 22, 2025). The government does not offer any argument as to why Rule 48(a) applies following the entry of a final judgment and, for that reason, the Court denied the government's motion with respect to Mr. Adams as moot. See Order [Dkt. No. 181].

As to Mr. Connell, his appeal pending before the D.C. Circuit deprives the Court of jurisdiction to grant his motion. See Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Following the Court's order denying the government's motion to dismiss with respect to Mr. Connell, see Order [Dkt. No. 181], the government took the extraordinary step of moving before the D.C. Circuit for an order vacating the conviction it had secured against Mr. Connell and remanding to this Court for dismissal. See United States v. Cody Carter Connell, USCA Case No. 24-3180, Appellee's Unopposed Motion to Vacate Convictions and Remand for Dismissal (D.C. Cir. Jan. 23, 2025) [No. 2095908]. The government's motion remains pending in the D.C. Circuit. This Court therefore presently lacks jurisdiction to dismiss the case against Mr. Connell. See Order [Dkt. No. 181].

In conclusion, the Court notes that the pardons issued to Mr. Connell and Mr. Adams do not undo the damage done by these two defendants and the other insurrectionists on

January 6, 2021. Nor will they change the truth of what happened on that day of infamy. As Judge Chutkan aptly put it:

> More broadly, no pardon can change the tragic truth of what happened on January 6, 2021. On that day, "a mob professing support for then-President Trump violently attacked the United States Capitol" to stop the electoral college certification. Trump v. Thompson, 20 F.4th 10, 15 (D.C. Cir. 2021). The dismissal of this case cannot undo the "rampage [that] left multiple people dead, injured more than 140 people, and inflicted millions of dollars in damage." Id. It cannot diminish the heroism of law enforcement officers who "struggled, facing serious injury and even death, to control the mob that overwhelmed them." United States v. Griffin, 119 F.4th 1001, 1004 (D.C. Cir. 2024). It cannot whitewash the blood, feces, and terror that the mob left in its wake. [Trump v. ]Thompson, 20 F.4th at 19. And it cannot repair the jagged breach in America's sacred tradition of peacefully transitioning power.
>
> In hundreds of cases like this one over the past four years, judges in this district have administered justice without fear or favor. The historical record established by those proceedings must stand, unmoved by political winds, as a testament and as a warning.

United States v. Banuelos, Crim. No. 24-0135 (TSC), Order (D.D.C. Jan. 22, 2025) [Dkt. No. 30] at 2.

## III. CONCLUSION

For the reasons outlined in this Memorandum Opinion, the United States' Motion to Dismiss Indictment with Prejudice Pursuant to Federal Rule of Criminal Procedure 48(a) [Dkt. No. 180] has been DENIED as moot with respect to Mr. Adams and DENIED for lack of jurisdiction with respect to Mr. Connell.

An Order consistent with this Memorandum Opinion was issued on January 22, 2025. See Order [Dkt. No. 181].

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 1/29/25